1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

```
_____ FILED _____ LODGED
_____ RECEIVED
      09/07/2021
   CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY
```

Hon. Theresa L. Fricke

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

IOVANNY CASTRO-CAMACHO,
ALVARO LOPEZ-QUINTERO, and
AGUSTIN GAMEZ-GARCIA,

Defendants.

CASE NO. 3:21-mj-05187

COMPLAINT for VIOLATIONS

21 U.S.C. § 841(a)(1), (b)(1)(A) and 846

BEFORE the Honorable Theresa L. Fricke, United States Magistrate Judge, U.S. Courthouse, Tacoma, Washington, the undersigned complainant being duly sworn states:

## COUNT 1

### (Conspiracy to Distribute Controlled Substances)

Beginning at a time unknown, but within the last five years, and continuing until on or about August 19, 2021, in Pierce County, within the Western District of Washington, and elsewhere, IOVANNY CASTRO-CAMACHO, ALVARO LOPEZ-QUINTERO, AGUSTIN GAMEZ-GARCIA and others known and unknown, did knowingly and intentionally conspire to distribute substances controlled under Title 21,

COMPLAINT – 1
*United States v. Castro-Camacho et al.*

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  United States Code, Section 812, including heroin, methamphetamine, cocaine, and N-
2  phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl).

3     It is further alleged that as to IOVANNY CASTRO-CAMACHO, ALVARO
4  LOPEZ-QUINTERO, and AGUSTIN GAMEZ-GARCIA, their conduct as members of
5  the conspiracy charged in Count 1, which includes the reasonably foreseeable conduct of
6  other members of the conspiracy charged in Count 1, involved 50 grams or more of
7  actual methamphetamine; one kilogram or more of a mixture or substance containing a
8  detectable amount of heroin; five kilograms of more of a mixture of substance containing
9  a detectable amount of cocaine; and 400 grams or more of a mixture or substance
10 containing fentanyl.

11    All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)
12 and 846.

13                          **COUNT 2**
14            **(Distribution of Controlled Substances)**

15    On or about August 12, 2021, at Lacey, Thurston County, within the Western
16 District of Washington, and elsewhere, IOVANNY CASTRO-CAMACHO, ALVARO
17 LOPEZ-QUINTERO and AGUSTIN GAMEZ-GARCIA, did knowingly and
18 intentionally distribute, and did aid and abet the distribution of, substances controlled
19 under Title 21, United States Code, Section 812, to wit, methamphetamine, heroin and N-
20 phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl).

21    It is further alleged that the offense involved 50 grams or more of a mixture or
22 substance containing methamphetamine, its salts, isomers, or salts of its isomers.

23    All in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A), and
24 Title 18, United States Code, Section 2.

25                          **COUNT 3**
26      **(Possession with Intent to Distribute Controlled Substances)**

27    On or about August 19, 2021, at McCleary, Grays Harbor County, within the
28 Western District of Washington, and elsewhere, IOVANNY CASTRO-CAMACHO,

COMPLAINT – 2
*United States v. Castro-Camacho et al.*

ALVARO LOPEZ-QUINTERO and AGUSTIN GAMEZ-GARCIA, did knowingly and intentionally possess, and did aid and abet the possession of, with the intent to distribute, methamphetamine and N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl)., controlled substances under Title 21, United States Code, Section 812.

It is further alleged that the offense involved 50 grams or more of a mixture or substance containing methamphetamine, its salts, isomers, or salts of its isomers.

All in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A), (b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT 4
**(Possession with Intent to Distribute Controlled Substances)**

On or about August 19, 2021, at Lakewood, Pierce County, within the Western District of Washington, and elsewhere, IOVANNY CASTRO-CAMACHO, did knowingly and intentionally possess, and did aid and abet the possession of, with the intent to distribute, methamphetamine and heroin, controlled substances under Title 21, United States Code, Section 812.

It is further alleged that the offense involved 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, and 50 grams or more of methamphetamine, its salts, isomers or salts of its isomers.

All in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A), (b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT 5
**(Possession with Intent to Distribute Controlled Substances)**

On or about August 19, 2021, at Tacoma, Pierce County, within the Western District of Washington, and elsewhere, the defendant, ALVARO LOPEZ-QUINTERO and AGUSTIN GAMEZ-GARCIA did knowingly and intentionally possess, and did aid and abet the possession of, with the intent to distribute, heroin, cocaine, and N-phenyl-N-

COMPLAINT – 3
*United States v. Castro-Camacho et al.*

1  [1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl).controlled substances under
2  Title 21, United States Code, Section 812.

3      It is further alleged that the offense involved one kilogram or more of a mixture or
4  substance containing a detectable amount of heroin; five kilograms or more of a mixture
5  or substance containing a detectable amount of cocaine; and 400 grams or more of a
6  mixture or substance containing fentanyl.  .

7      All in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A), and
8  Title 18, United States Code, Section 2.

9      **<u>INTRODUCTION</u>**

10      1.    I, Colin Fine, am an "investigative or law enforcement officer of the United
11  States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an
12  officer of the United States who is empowered by law to conduct investigations of, and to
13  make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

14      2.    I am a Special Agent with the Drug Enforcement Administration (DEA),
15  United States Department of Justice, and have been so employed since April 2017.  In
16  that capacity, I investigate violations of the Controlled Substances Act (Title 21, United
17  States Code, Section 801, et seq.).  I am currently assigned to the Seattle Field Division,
18  Tacoma Resident Office.

19      3.    My training and experience include, but are not limited to, a twenty-week
20  course at the DEA academy in Quantico, Virginia.  At the DEA academy, I was trained in
21  all aspects of conducting narcotics investigations to include debriefing defendants,
22  witnesses, and informants, conducting surveillance, executing search warrants,
23  conducting controlled deliveries, utilizing law enforcement, open source, and social
24  media databases, and seizing narcotics and narcotics-related assets.   Prior to my
25  employment with DEA, I served 12 years on active duty in the United States Marine
26  Corps, achieving the rank of Gunnery Sergeant.

27      4.    During the course of my law enforcement career, I have become familiar
28  with investigations of drug trafficking organizations, methods of importation and

COMPLAINT – 4
*United States v. Castro-Camacho et al.*

1   exportation, distribution, and smuggling of controlled substances, and financial and

2   money laundering investigations.  I have participated in investigations involving

3   organizations trafficking in controlled substances, including heroin, and such

4   investigations have resulted in the arrests of drug traffickers and seizures of controlled

5   substances.  I have participated in the execution of drug search warrants and have

6   personally been involved in the seizure of controlled substances.  Based on my training,

7   experience and conversations with other experienced narcotics investigators, I have

8   gained experience in the techniques and methods used by drug traffickers to distribute

9   controlled substances.

10         5.      The facts set forth in this affidavit arise from my personal and direct

11   participation in the investigation, my experience and training as a DEA Special Agent,

12   my conversations with witnesses and other law enforcement personnel participating in

13   this and related investigations, and my review of relevant documents and reports.  I have

14   not included each and every fact known to me or other investigative personnel

15   concerning this investigation.

16         6.      I have set forth only the facts I believe are necessary to establish probable

17   cause to believe that IOVANNY CASTRO-CAMACHO, ALVARO LOPEZ-

18   QUINTERO, and AGUSTIN GAMEZ-GARCIA, have committed the crimes of

19   possessing, with the intent to distribute, methamphetamine, heroin, cocaine, and fentanyl,

20   in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B) and Title 21,

21   United States Code, Section 841(a)(1), (b)(1)(A).

22                          **SUMMARY OF INVESTIGATION**

23                                **Background**

24         7.      This investigation was conducted by the DEA Tacoma Resident Office, the

25   Joint Narcotics Enforcement Team (JNET), and the Grays Harbor Drug Task Force

26   (GHDTF).  I have obtained and read reports prepared by various law enforcement

27   officers participating in this investigation, including but not limited to Special Agents and

28   Task Force Officers with DEA, detectives and officers from JNET, GHDTF, and other

COMPLAINT – 5
*United States v. Castro-Camacho et al.*

various departments or agencies, along with other sources of information.  When I refer
to the criminal history of a subject, confidential source (CS), or confidential informant
(CI), I have read the available criminal history from state or federal agencies.  When I
have included event times, those times are approximate.  When I have included
summaries of conversations, the summaries are not intended to present a verbatim
recitation of the words used by the participants.

8.     During this investigation, agents[1] have received the assistance of multiple
confidential sources referred to herein as "CS-1" and "CS-2".  CS-1 is cooperating with
the GHDTF and JNET for charging considerations in a state case involving narcotics.
While CS-1 was working with law enforcement, charges had not been filed in that case.
As set forth below, due to CS-1's misconduct, charges have since been filed against that
individual.

9.     CS-1 has been involved in the illicit drug trade for more than five years.
CS-1 has also been a user of narcotics.  CS-1 has at least eight felony convictions that are
more than 20 years old, including possession of stolen property, narcotics possession with
intent to distribute, and burglary.  CS-1 has at least one gross misdemeanor conviction for
driving offenses in the last four years.  While investigators believe the information
provided by CS-1 in connection with this investigation was reliable, CS-1 was caught
engaged in unauthorized criminal activity and has been terminated as a source.

10.    CS-2 has cooperated with the GHDTF, JNET, and DEA for at least two
years for both charging considerations and for financial benefit.  During their time as a
CS, CS-2 has purchased drugs from many suspects who were later arrested and convicted
in both State and Federal Court.  In 2019, CS-2 conducted three controlled purchases
from suspects in Lewis County, which led to the ultimate seizure of 12 pounds of

---

[1] When I use the terms "agents" and "investigators" in this affidavit, I am referring to law enforcement personnel,
including but not limited to agents, task force officers, detectives, and others from the DEA, the Lewis County Joint
Narcotics Enforcement Team (JNET), the Grays Harbor Drug Task Force (GHDTF), and other law enforcement.

COMPLAINT – 6
*United States v. Castro-Camacho et al.*

1  Methamphetamine, several thousand pills that contained Fentanyl and 2 firearms found to

2  be in the possession of a felon.  A total of 4 arrests were made with one Federal

3  conviction.  In 2020, CS-2 conducted numerous controlled purchases of drugs that

4  ultimately yielded 18 pounds of Methamphetamine, 12 pounds of Heroin, several

5  thousand pills that contained Fentanyl, seven firearms and seven arrests, of which most

6  have been sentenced to Federal Prison.  CS-2 has 3 felony convictions for crimes of

7  deception that are 14 years old and one misdemeanor conviction for a crime of deception

8  that is eight years old.

9      11.    In July 2021, agents received information from CS-1 that they were

10  communicating with a heroin and counterfeit Oxycodone pill supplier via phone number

11  (253) 981-2716.  CS-1 continued that they were offered three ounces of heroin and

12  samples of counterfeit Oxycodone pills stamped M-30 suspected to contain fentanyl for

13  $1,500.  CS-1 stated that they did not know the name of the heroin and counterfeit

14  Oxycodone pill supplier, but stated that when they spoke on the phone there were two

15  Hispanic males on the other end of the line, stating that one spoke clearer English with a

16  Spanish accent that the second males English was a little broken but could communicate.

17  This phone call was also ear-tipped by law enforcement.  At the direction of

18  investigators, CS-1 arranged for a meeting and the user of x2716 agreed to meet in the

19  Olympia, WA area to complete the controlled purchase.

20                          **First Controlled Purchase**

21      12.    On July 15, 2021, before the first controlled purchase, investigators met

22  with CS-1 and searched their person and vehicle for contraband and U.S. currency, with

23  negative results.  CS-1 was provided with $1,500 in pre-recorded buy funds.  CS-1

24  showed investigators further text communications between themselves and x2716 which

25  stated that the source of supply would be driving a light brown Toyota Camry and

26  arriving to the meet location at 8:45 PM.  At the direction of investigators, CS-1 replied

27  with a description of their vehicle.

28

COMPLAINT – 7
*United States v. Castro-Camacho et al.*

13.     Near 8:45 PM investigators identified a light brown Toyota Camry, bearing Washington license plate BYK2137, arrive in the parking lot of the agreed upon meet location and park facing the main road, where the occupants of the Camry could observe vehicles entering the parking lot.  Due to the tint of the vehicle, investigators view of the inside of the vehicle was somewhat limited; however, they could see at least two males occupying the vehicle.

14.     A records check of the vehicle showed that the vehicle was registered to a Rosario Guadalupe Camacho-Encinas at 4815 115th Street Court SW, Apartment B, Lakewood, WA.  A law enforcement officer familiar with Lakewood noted that the registered address was likely incorrect and should have been 115th Street Court East, instead of SW.

15.     As CS-1's vehicle pulled into the parking lot of the meet location, and proceeded to a parking spot, investigators observed the Toyota Camry reverse from their parked location and proceed in the direction of CS-1's vehicle and park directly next to it at which point CS-1 exited their vehicle and entered the Toyota Camry for approximately 5 minutes.

16.     After CS-1 exited the Toyota Camry, CS-1 returned to their vehicle and were surveilled to a pre-determined location where they turned over three ounces of heroin, multiple counterfeit Oxycodone blue pills stamped M-30 suspected to contain fentanyl, and a small bag of methamphetamine.  The counterfeit Oxycodone pills were contained in three different bags bearing the letters "M", "I", and "LA".  CS-1 told investigators that they were three different types of pills and that in the future they could order whichever kind that they liked.

17.     CS-1's person and vehicle were searched for other contraband and U.S. currency with negative results.  CS-1 stated that there were three Hispanic males inside the Toyota Camry, with the driver and the rear seat passenger doing most of the talking and completing the transaction.

COMPLAINT – 8
*United States v. Castro-Camacho et al.*

18.     Investigators later field tested the heroin and methamphetamine, both of which showed a presumptive positive for their respective substance.  The DEA Western Regional Laboratory has completed analysis on the heroin from this controlled purchase and determined that the net weight of the heroin was 76.159 grams with a purity of 49% (with an error of 5%), showing 37.317 grams of pure heroin (plus or minus 3.562 grams).

19.     Lab results on the suspected fentanyl pills are still pending.  However, I know, based on my training and experience, that pills found in this District stamped with an "M" and the number "30" commonly contain fentanyl.

20.     This controlled purchase was completed using an electronic transmitting and recording device which captured still images of IOVANNY CASTRO-CAMACHO as the driver of the vehicle and person conducting the transaction.

21.     Investigators maintained surveillance on the Toyota Camry as it departed the meet location and proceeded northbound on Interstate 5 without making any other stops along the way.  The Toyota Camry was last seen parking near apartment B at 4815 115th Street Court East, in Lakewood, with IOVANNY CASTRO-CAMACHO and two others exiting the vehicle and entering the door for Apartment B.

**Traps and Trace and Vehicle GPS Location Warrants**

22.     On July 19, 2021, the Honorable Judge James Lawler, Lewis County Superior Court, found probable cause to authorize a Trap and Trace Pen Register Order for cellular number (253) 981-2716 which is serviced by T-Mobile.  The Honorable Judge James Lawler further found probable cause to authorize a GPS tracker warrant, allowing investigators to affix a GPS tracking device to the 2000 Toyota Camry bearing Washington plate # BYK2137.

23.     On July 21, 2021, the Trap and Trace Ping order was activated and investigators began to receive geo-location data.  On July 22, 2021, a GPS tracking device was secured onto the 2000 Toyota Camry by investigators.  The 2000 Toyota Camry was parked directly in front of IOVANNY CASTRO-CAMACHO's residence,

COMPLAINT – 9
*United States v. Castro-Camacho et al.*

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   4801 115th Street Court East, Apartment #3 in Lakewood, WA during the time of

2   installation.

3        24.    While monitoring the two technologies and conducting physical

4   surveillance, it was noted that cellular phone x2716 would return each night to 1928 56th

5   Street, Apartment # 9, in Tacoma, WA and that the GPS location data would travel with

6   ALVARO LOPEZ-QUINTERO as he would depart to work in the morning and return at

7   night.

8        25.    During surveillance of the x2716 pings investigators noted that a gold

9   Honda Civic bearing WA license plate BWK3731 to be traveling in tandem with the GPS

10   location data of the x2716 phone and was observed parking at the 1928 E 56th St

11   Apartments.  The Honda Civic was noted as being registered to ALVARO LOPEZ-

12   QUINTERO with no Washington Driver's License attached and a WA DOL records

13   check indicated that no one using that name has a driver's license in the state of WA.

14   The registered address of the Honda indicated that it was addressed to a used car lot in

15   Lakewood, not far from the 115th Street Court East addresses.  During surveillance

16   investigators observed ALVARO LOPEZ-QUINTERO exit and enter 1928 E 56th St,

17   Apartment 9.

18        26.    Tracker data and physical surveillance of the Toyota Camry showed it

19   would return each night to 4801 115th St Ct E, Apartment # 3 in Lakewood, WA and

20   primarily be driven by IOVANNY CASTRO-CAMACHO.

21                  **New Phone Number**

22        27.    In the days following the initial controlled delivery of drugs in Thurston

23   County, the CS in this investigation was contacted by IOVANNY CASTRO-CAMACHO

24   and were told that any future drug conversations/orders needed to take place by calling

25   cellular number (206) 231-1510.  A records check of this number showed it to be

26   serviced by T-Mobile and subscribed to "Jose Lopez-Castro" with a vague address of

27   115th Street West, Lakewood, WA (missing a house number and incorrect street

28   identifiers).  Based on my training and experience, I know drug traffickers enter

COMPLAINT – 10
*United States v. Castro-Camacho et al.*

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  incomplete addresses and utilize fake names while purchasing phones in an effort to
2  avoid detection by law enforcement.

3  **Second Controlled Purchase**

4  28.    On July 29, 2021, CS-1 was directed to make arrangements to purchase
5  drugs from this DTO.  CS-1 ordered one pound of methamphetamine, four ounces of
6  heroin and 200 counterfeit Oxycodone blue pills stamped M-30, suspected to contain
7  fentanyl, by calling and texting the x1510 phone.  The agreed upon price was $4800.  The
8  agreed upon location for the deal was the same location as the first controlled purchase in
9  Olympia, WA.

10  29.    In preparation for this operation, investigators established surveillance on
11  both Lakewood apartments (4815 115th St Ct E, Apartment B and 4801 115th St Ct E,
12  Apartment 3) and the apartments at 1928 E 56th St, Tacoma.  In doing so, investigators
13  observed a Hispanic male, later identified as ALVARO LOPEZ-QUINTERO, arrive at
14  the 1928 E 56th St Apartments in the gold-colored Honda Civic, bearing WA license plate
15  BWK3731, that investigators had previously observed on surveillance.  The Civic was
16  traveling with the GPS location data for the x2716 phone.

17  30.    Once CS-1 was with investigators, their vehicle and persons were searched
18  for contraband and U.S. currency, with negative results.  CS-1 was provided with $4800
19  in pre-recorded buy funds.  CS-1 was closely monitored during this operation and was
20  again supplied an electronic transmitting and recording device.

21  31.    While CS-1 was with investigators, investigators observed ALVARO
22  LOPEZ-QUINTERO depart 1928 E 56th St, Tacoma, WA in a vehicle previously
23  unknown to investigators.  Investigators noted that the x2716 phone location data showed
24  it was with him as he traveled in the new vehicle.  ALVARO LOPEZ-QUINTERO was
25  seen arriving at 4801 115th St Ct E, Apartment # 3, and meeting with IOVANNY
26  CASTRO-CAMACHO.  Both men entered the Toyota Camry (with the tracking device
27  installed) and traveled south in the direction of the agreed upon meet location.
28  Investigators continued to monitor the pings for phone x2716 and noted that it also

COMPLAINT – 11
*United States v. Castro-Camacho et al.*

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

traveling south on I-5 with the Camry. The vehicle that ALVARO LOPEZ-QUINTERO arrived in to Lakewood later departed the area with another driver and returned to the E 56th St Apartments in Tacoma.

32.    At this point, investigators directed CS-1 to place a phone call to the x1510 cell phone prior to the suspect's arrival at the meet location. Based on the conversation, investigators believed this cellular device was also in the Camry along with the x2716 phone.

33.    The Toyota Camry subsequently arrived at the agreed upon meet location and met with CS-1. Both IOVANNY CASTRO-CAMACHO and ALVARO LOPEZ-QUINTERO participated in the drug transaction, based on their activities and conversations, counting money and conducting the transaction with CS-1. CS-1 obtained the one pound of methamphetamine, four ounces of heroin and 200 pills before getting into their own vehicle and leaving.

34.    Members of the surveillance team followed IOVANNY CASTRO-CAMACHO and ALVARO LOPEZ-QUINTERO in the Camry back to Lakewood where it made one brief stop before returning to IOVANNY CASTRO-CAMACHO's residence, 4801 115th St Ct E, Apartment #3.

35.    All purchased evidence was secured by investigators after a debrief with CS-1. CS-1's person and vehicle were search for U.S. currency and contraband, with negative results. During this debrief CS-1 stated that they were quoted the following prices for narcotics, $22,000 for a kilogram or $750 per ounce of heroin, $2,200 for a pound of methamphetamine, and $4 per pill for the counterfeit Oxycodone blue pills stamped M-30 suspected to contain fentanyl. The methamphetamine and heroin purchased were field tested for their respective substance, and returned a positive result indicating the presence of methamphetamine and heroin.

**CS-1 Criminal Activity**

36.    As set forth above, CS-1 was equipped with a recording device during the second controlled buy. After the purchase, while reviewing the recording from the

COMPLAINT – 12
*United States v. Castro-Camacho et al.*

1  device, investigators noted that it appeared that CS-1 had "pinched the bag", keeping a
2  small amount of heroin for themselves.

3         37.    In addition, while monitoring the GPS tracking device of the Toyota Camry
4  investigators noted that on July 31, 2021, the Camry was shown to have traveled south
5  directly to previous meet locations in Olympia after the hour of 2100.  A review of
6  surveillance cameras in the area showed a vehicle bearing a strong resemblance to CS-1's
7  vehicle being in the lot at the same time as the Camry.  CS-1 had not been asked to or
8  authorized to meet with the targets of this investigation outside of law enforcement's
9  direction.

10         38.    On August 2, 2021, CS-1 was contacted and questioned regarding the
11  "pinching of the bag" and the possible meet on July 31.  CS-1 admitted to stealing a small
12  amount of heroin on the July 29 controlled purchase operation.  CS-1 also admitted to
13  contacting and meeting IOVANNY CASTRO-CAMACHO on July 31, which they
14  arranged via the x1510 phone number.  During this meet the CS purchased 2 ounces of
15  heroin for $1,500 on their own account.  The heroin purchased without the permission of
16  investigators was seized, CS-1's contract with the GHDTF was voided, and an arrest
17  warrant was issued by the Grays Harbor County Prosecutors Office for CS-1's previously
18  uncharged state narcotics trafficking crimes.  CS-1 was decommissioned by the GHDTF
19  & JNET and banned from participating in any further operations or investigations.

20                          **Second Trap and Trace Order**

21         39.    On August 3, 2021, a Trap and Trace Ping Order was signed and authorized
22  by the Honorable Judge James Lawler, Lewis County Superior Court.  Once the GPS
23  locations were being disseminated to law enforcement, it was clear that the phone ending
24  in x1510 was returning to and residing at 4801 115th St Ct E, Apartment #3 in Lakewood,
25  WA.  This cellular device was also pinging with the cell phone number x2716 as they
26  went to construction job locations in Bremerton and Seattle, WA during the day.

27

28

COMPLAINT – 13
*United States v. Castro-Camacho et al.*

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**Third Controlled Purchase – Count 2**

40.     Based on CS-1's unauthorized criminal conduct, investigators contacted a former confidential source, hereinafter referred to as CS-2, and asked for their assistance in continuing the purchase of drugs from this DTO.

41.     On August 12, 2021, investigators began preparing for an operation that entailed CS-2 calling the cellular number ending in x1510 and ordering one pound of methamphetamine.  Prior to this deal being set up, surveillance units set up on 4801 115th St Ct E, Apartment # 3 in Lakewood, WA and 1928 E 56th St, building #1, in Tacoma, WA.  In doing so, investigators noted that ALVARO LOPEZ-QUINTERO exited apartment number 9, went to the gold Honda Civic bearing WA plate #BWK3731, and departed the area.  Investigators attempted to follow the Honda away and lost observation of it within 5 minutes.

42.     At this same time, investigators observed IOVANNY CASTRO-CAMACHO depart his residence for a restaurant and then return to his residence – maintaining surveillance on him the entire time.  Around this time, CS-2 reached out to IOVANNY CASTRO-CAMACHO via x1510 and asked for one pound of methamphetamine.

43.     Approximately 45 minutes after these observations and 5 minutes after IOVANNY CASTRO-CAMACHO returned home, he called CS-2 from the x1510 number and asked if they were ready for "water" or "clear".  CS-2 responded by telling him yes, at which time IOVANNY CASTRO-CAMACHO asked for an address to meet them and also stated that he would send a "driver".  I know from my training and experience that "water" and "clear" in this context are code for methamphetamine.

44.     At the direction of investigators, CS-2 texted x1510 a parking lot location in the Lacey area to conduct the deal.  IOVANNY CASTRO-CAMACHO, responded via text that it would be about an hour.  Approximately 10 minutes after setting up the deal, IOVANNY CASTRO-CAMACHO sent another text stating that it would only be 30 minutes until his driver arrived.  Based on phone pings and observations by investigators,

COMPLAINT – 14
*United States v. Castro-Camacho et al.*

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  IOVANNY CASTRO-CAMACHO and the cellular phone x1510 remained at 4801 115th
2  St Ct E, Apartment # 3 for this controlled purchase.

3       45.    While monitoring the GPS location data from the x2716 phone, it was
4  noted that it was three minutes from Lacey meet location, in the Nisqually Valley area.
5  These pings were noted after IOVANNY CASTRO-CAMACHO via x1510 told CS-2
6  that the driver would arrive in 30 minutes.  Based on my training and experience, and my
7  knowledge of the investigation, I believe that IOVANY CASTRO-CAMACHO reached
8  out to the user of the x2716 phone to ask them to conduct the planned transaction for him.

9       46.    Prior to conducting this operation, CS-2 and their vehicle were both
10 searched yielding nothing criminal.  CS-2 was provided with $2200 in prerecorded buy
11 funds as well as an electronic recording and transmitting device.

12      47.    As the pings for x2716 grew closer to the meet location, CS-2 received a
13 call from IOVANNY CASTRO-CAMACHO via the x1510 number, telling them that the
14 driver had arrived and was driving a tan/gold 1999 Honda Civic with tinted windows and
15 asked what vehicle that CS-2 would be driving.  CS-2 provided a description of their
16 vehicle.  Simultaneously, members of the surveillance team confirmed this fact and
17 positively identified the Honda Civic bearing WA plate #BWK3731, registered to and
18 last observed being driven by ALVARO LOPEZ-QUINTERO, and occupied by at least
19 one other individual, later identified as AGUSTIN GAMEZ-GARCIA.  After CS-2
20 arrived at the meet location, the Honda Civic pulled up next to their vehicle.  Once next
21 to each other, CS-2 exited their vehicle with $2200 in pre-recorded U.S. Currency as well
22 as the recording device and got into the backseat of the gold Honda Civic.

23      48.    Shortly after CS-2 entered the Honda, IOVANNY CASTRO-CAMACHO
24 called CS-2 again from the x1510 number, to complete the transaction as he was the only
25 one out of the three that could speak English and acted as a translator.  IOVANNY
26 CASTRO-CAMACHO told CS-2 where in the vehicle the methamphetamine was and
27 directed them to a white gift bag.  CS-2 in turn handed the driver of the Honda Civic,
28 ALVARO LOPEZ-QUINTERO, $2200 in prerecorded buy funds.

COMPLAINT – 15
*United States v. Castro-Camacho et al.*

49.     While still talking to IOVANNY CASTRO-CAMACHO on the phone, CS-2 was told future prices for other drugs such as heroin ($22,000 per kilogram or $750 per ounce), pills ($4 per pill) and cocaine ($1,200 per ounce).  Also, in the white gift bag was "samples", smaller amounts of heroin and pills suspected to contain fentanyl.

50.     Once the deal was complete, CS-2 drove to a pre-determined location where they handed all purchased drugs and the wire interception device to law enforcement.  CS-2 and their vehicle were also searched yielding nothing criminal.  It should be noted that the vehicle used by CS-2 was rented by JNET on their behalf and returned to JNET after this deal was complete.  It should further be noted that the cellular phone used by CS-2 for this deal was also purchased by JNET and retained by JNET after the deal.  The methamphetamine and heroin purchased were field tested for their respective substance, and returned a positive result indicating the presence of methamphetamine and heroin.  Tests of the sample pills, believed to contain fentanyl, are pending.

51.     While CS-2 was being debriefed, investigators followed the gold Honda Civic back to Tacoma, where ALVARO LOPEZ-QUINTERO and AGUSTIN GAMEZ-GARCIA were seen parking at a burger restaurant where they were monitored as they ate.  After leaving this establishment, the pair went to a nearby convenience store where they were purchased a large package containing toilet paper.  After leaving the convenience store, the gold Honda Civic was followed directly to 1928 East 56th Street in front of Building #1, where both ALVARO LOPEZ-QUINTERO and AGUSTIN GAMEZ-GARCIA were seen entering apartment # 9 with the abundance of toilet paper.  Members of the surveillance team remained on scene for about an additional 15 minutes, noting that no one else entered and no one left apartment # 9.

**Search Warrants**

52.     On August 19, 2021, the Honorable Judge James Lawler, Lewis County Superior Court, signed and authorized search warrants for 4801 115th Street Court East, Apartment # 3 in Lakewood, Washington, 1928 East 56th Street, Bldg # 1, Apartment # 9

COMPLAINT – 16
*United States v. Castro-Camacho et al.*

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  in Tacoma, Washington, the tan 2000 Toyota Camry, and the tan/gold 2002 Honda Civic

2  involved in this case.

3  <center>**McCleary Traffic Stop – Count 3**</center>

4      53.     Later on August 19, investigators planned to order multiple pounds of

5  methamphetamine and 500 counterfeit Oxycodone blue pills.  Prior to the deal being set,

6  investigators again established surveillance on both apartments, awaiting the two known

7  vehicles (the Camry and the Honda) to arrive.  In checking phone pings, it was noted that

8  both x1510 and x2716 were both in Seattle throughout the day, with the users presumably

9  still working their daily construction job, before heading south along I-5.

10      54.     During surveillance, law enforcement saw the Toyota Camry arrive at 4801

11  115th Street Court East, Apartment #3 in Lakewood and the Honda Civic arrive at 1928 E

12  56th Street, Apartment # 9.  The Toyota Camry was occupied by IOVANNY CASTRO-

13  CAMACHO and the Honda Civic was occupied by ALVARO LOPEZ-QUINTERO and

14  AGUSTIN GAMEZ-GARCIA and were seen walking into Building #1, Apartment #9.

15      55.     After the suspects had returned to their respective apartments, investigators,

16  utilizing the same cellular telephone previously utilized by CS-2, contacted IOVANNY

17  CASTRO-CAMACHO at the x1510 number and ordered two pounds of

18  methamphetamine and 500 fentanyl pills stamped M-30 via text message.  Investigators

19  asked that the drugs be delivered to a location in Elma, WA.  IOVANNY CASTRO-

20  CAMACHO agreed and stated that the delivery would occur at approximately 9 PM.

21      56.     At or around 8 PM, ALVARO LOPEZ-QUINTERO and AGUSTIN

22  GAMEZ-GARCIA were observed leaving apartment # 9 and walking to the Honda Civic.

23  ALVARO LOPEZ-QUINTERO was observed carrying a large black duffle like bag

24  which he placed into the rear seat before entering the driver's seat.  The Honda with both

25  occupants left 1928 E 56th St and were followed directly to 4801 115th Street Court East

26  before meeting with IOVANNY CASTRO-CAMACHO in the parking lot near

27  Apartment # 3.  IOVANNY CASTRO-CAMACHO was observed by investigators

28  accessing the rear sear compartment of the Honda before returning to Apartment # 3.

COMPLAINT – 17
*United States v. Castro-Camacho et al.*

After a few moments had passed, ALVARO LOPEZ-QUINTERO and AGUSTIN GAMEZ-GARCIA were seen getting back into the Honda Civic and leaving, at which time they were followed south on I-5, subsequently exiting onto Highway 101 and continuing west towards Grays Harbor.

57.     Once the Honda passed McCleary, a traffic stop was conducted on the vehicle and ALVARO LOPEZ-QUINTERO and AGUSTIN GAMEZ-GARCIA were subsequently detained pending a search of the vehicle per a search warrant.  A search of the vehicle revealed 2 pounds of methamphetamine and 500 counterfeit Oxycodone blue pills stamped M-30 suspected to contain fentanyl were concealed inside a sock in the back seat.  That the cell phone x2716 was being utilized to provide directions to the pre-arranged meet location.  The methamphetamine seized was field tested, and returned a positive result indicating the presence of methamphetamine.  Again, test results for the pills are pending.

58.     Both ALVARO LOPEZ-QUINTERO and AGUSTIN GAMEZ-GARCIA were provided with their Miranda Warnings by a Spanish speaking law enforcement officer, to which both acknowledged and agreed to speak with investigators.  ALVARO LOPEZ-QUINTERO did not have any identification on him and verbally provided his name and date of birth to investigators.  AGUSTIN GAMEZ-GARCIA provided law enforcement with a Mexican identification card bearing his name and date of birth.  Both ALVARO LOPEZ-QUINTERO and AGUSTIN GAMEZ-GARCIA stated that they were traveling into Grays Harbor County to meet a female, but could not provide any further information on the meeting.  Both denied the presence of narcotics or anything illegal in the vehicle, both claimed to live in Lakewood, WA, and both falsely denied living in Tacoma, WA.  AGUSTIN GAMEZ-GARCIA stated that after they got off work, they traveled to their residence, changed clothes and came straight to this location and denied stopping to visit anyone else.

COMPLAINT – 18
*United States v. Castro-Camacho et al.*

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**Lakewood Apartment Search Warrant – Count 4**

59.     After the Honda was stopped in McCleary, WA investigators served the search warrant on 4801 115th Street Court East, Apartment # 3 in Lakewood. IOVANNY CASTRO-CAMACHO and a second Hispanic male were present at the apartment and were detained.

60.     Once the apartment was safe and secure, a Spanish speaking agent provided IOVANNY CASTRO-CAMACHO of his Miranda Warnings, which he acknowledged and waived.  When asked about drugs, IOVANNY CASTRO-CAMACHO motioned over toward the television in the living room to a black duffel bag.  Inside the black duffel bag investigators seized 13.85 pounds of (over 6 gross kilograms) of methamphetamine .   Also in this area was a plethora of random Identification cards and social security cards that appeared at face value to be not authentic.  IOVANNY CASTRO-CAMACHO initially verbally identified himself as "Giovanni Alejandro Castro DOB/3-17-90".  Also seized from the apartment was a 136 gross grams heroin (approximately 5 ounces), and 158 gross grams of methamphetamine from the back bedroom apparently occupied by the other Hispanic male present at the apartment.  The methamphetamine and heroin seized were field tested for their respective substance, and returned a positive result indicating the presence of methamphetamine and heroin.

61.     IOVANNY CASTRO-CAMACHO later told investigators that all of the narcotics in the residence were his; that ALVARO LOPEZ-QUINTERO and AGUSTIN GAMEZ-GARCIA had dropped off the black duffel bag containing the 13+ pounds of methamphetamine earlier in the evening, as IOVANNY CASTRO-CAMACHO was planning on making another delivery that evening.  He also confirmed that ALVARO LOPEZ-QUINTERO and AGUSTIN GAMEZ-GARCIA were currently making a delivery for him to a person in Elma, WA.  While IOVANNY CASTRO-CAMACHO denied that ALVARO LOPEZ-QUINTERO and AGUSTIN GAMEZ-GARCIA were working for or being directed by him, he did admit that they sometimes did "favors" for him, including meeting a runner from California to pick up bulk narcotics, storing bulk

1 narcotics in their Tacoma apartment, and making deliveries for him.  IOVANNY

2 CASTRO-CAMACHO denied knowing what investigators would locate in the Tacoma

3 apartment.

**Tacoma Apartment Search Warrant – Count 5**

5      62.    Once all law enforcement involved had been briefed, the search warrant for

6 1928 East 56th Street, Building #1, Apartment #9 was served later that day.  The

7 apartment was empty at the time the warrant was executed, and appeared to only be lived

8 in by two individuals, ALVARO LOPEZ-QUINTERO and AGUSTIN GAMEZ-

9 GARCIA who were already in custody.

10      63.    In one of the bedrooms, identification and indicia for ALVARO LOPEZ-

11 QUINTERO was located.  Also in this room, investigators located and seized 19.75

12 pounds (almost nine gross kilograms) of suspected heroin, 17.7 pounds (over five

13 kilograms) of suspected cocaine, and several thousand pills suspected of containing

14 fentanyl (weighing approximately 1,066 gross grams),  Investigators also found $19,480

15 in U.S. currency.

16      64.    In the second bedroom, identification and indicia for AGUSTIN GAMEZ-

17 GARCIA was located.  Also in this room were several thousand more pills that were

18 suspected to contain fentanyl (1,142 gross grams), and a small amount of heroin (33 gross

19 grams).

20      65.    The heroin and cocaine seized were field tested for their respective

21 substance, and returned a positive result indicating the presence of heroin and cocaine.

22      66.    None of the pills seized or purchased in this case were tested due to the

23 hazardous nature of fentanyl; however, based on my training and experience, there is

24 probable cause to believe the pills contained fentanyl.  Lab results are pending.

25 / / /

26 / / /

27 / / /

28 / / /

COMPLAINT – 20
*United States v. Castro-Camacho et al.*

**CONCLUSION**

67.     Based on the foregoing, there is probable cause to charge IOVANNY CASTRO-CAMACHO, ALVARO LOPEZ-QUINTERO, and AGUSTIN GAMEZ-GARCIA with the crimes of *Conspiracy to Distribute Controlled Substances; Distribution of Controlled Substances, and Possession with Intent to Distribute Controlled Substances* (methamphetamine, heroin, cocaine, and fentanyl), in violation of Title 21, United States Code, Sections 841(a)(1) and 841 (b)(1)(A).

68.     Under Federal Rule of Criminal Procedure 4.1, this complaint is presented by reliable electronic means.

_____
COLIN FINE, Complainant
Special Agent, DEA

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit on the ___7th___ day of September, 2021.  Based on the complaint and sworn affidavit, the Court finds that there is probable cause to believe that the defendants committed the offenses set forth in the complaint.

Dated this ___7th___ day of September, 2021.

_____
The Hon. Theresa L. Fricke
United States Magistrate Judge

COMPLAINT – 21
*United States v. Castro-Camacho et al.*

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800